LEWIS, J.
Appellant, Department of Revenue (“Department”), challenges the trial court’s final summary judgment entered in favor of General Motors LLC (“GM”), concluding that the assessments challenged by GM constituted an impermissible double taxation or pyramiding of tax prohibited under Florida law. The Department raises three issues on appeal, only one of which merits discussion. The Department contends that the trial court reversibly erred in concluding that GM was not liable for use taxes assessed against it by the Department on the value of repairs performed by its dealers pursuant to GM’s Case-By-Case Adjustment Program (“Case-By-Case Program” or “Program”). We disagree and, for the reasons that follow, affirm.
Background
This appeal arises from three consolidated cases involving four use tax assessments that the Department issued to GM in connection with GM’s Case-By-Case *1193 Adjustment Program. In Florida, as elsewhere, GM sells its vehicles through a network of independently owned and operated retail dealers. Dealers purchase new GM vehicles from GM and then sell the vehicles to customers at retail. Florida imposes a sales tax on the full sales price of vehicles purchased in the State.
When customers purchase new GM vehicles, they are provided with a GM base limited manufacturer’s warranty (Base Warranty Program) that covers repairs needed to correct vehicle defects related to materials or workmanship when the defect manifests itself within a fixed number of years or miles from the date of the purchase. Parts provided under the Base Warranty Program are not subject to use tax because the customers paid for the right to replacement parts under the Base Warranty Program at the time of the retail sale.
In addition to the Base Warranty Program, GM also operates the Case-By-Case Program, which is the Program at issue in this appeal. Under that Program, GM authorizes dealers to provide repairs to customer vehicles for up to two years or 24,000 miles beyond a vehicle’s base warranty period based on their assigned “empowerment level” on a case-by-case basis, and at no additional cost to the customer, when the condition results from a defect in material or workmanship rather than normal aging or lack of proper maintenance. If the dealer determines that the repair is warranted, GM reimburses the dealer for the repair expense in the same way that it reimburses dealers for repairs made during the base warranty period. Repairs provided under the Case-By-Case Program are also commonly referred to by dealers and GM as the “Policy” or “Goodwill Adjustment Policy.”
Notice of the Case-By-Case Program is contained in the warranty manual that is provided to customers at the time of sale. For example, the 2002 warranty manual provides as follows:
Should you ever encounter a problem during or after the limited warranty period that is not resolved, talk to a member of dealer management. Under certain circumstances, General Motors and/or GM dealers may provide assistance after the limited warranty period has expired when the problem results from a defect in material or workmanship. These instances will be reviewed on a case by case basis. If your problem has not been resolved to your satisfaction, follow the Customer Satisfaction procedures as outlined on page 25 of this booklet.
(emphasis added).
Earlier versions of the warranty manual in effect prior to 2002, although not referring to the Program by name as the “Case-By-Case” or “Goodwill Adjustment Policy,” similarly invite customers to raise vehicle problems “during or after” the warranty period with the dealer (and ultimately with GM). For example, the 1993 warranty manual provided as follows: “Should you ever encounter a problem during or after the warranty periods that is not resolved, talk to a member of dealer management. If the problem persists, follow the additional procedure outlined in “Owner Assistance” on page 23 of this booklet.” The referenced “Owner Assistance” section of the manual provides a two-step “Customer Satisfaction Procedure” for customers to follow. If the repair issue is not resolved at the dealer level (step one), then customers are directed to contact GM directly (step two). GM empowers dealers to make case-by-case repairs without prior authorization from GM as long as the repair fits within the “empowerment level” assigned by GM to the dealer.
*1194 During the years at issue here, 1991-2007, GM reimbursed dealers for more than 400,000 repairs provided to Florida GM owners under the Case-By-Case Program. The total cost to GM was $293,839,587, or approximately $17 million per year. The uncontroverted testimony established that because of the large costs associated with its repair programs, including its Case-By-Case Program, GM estimates and reserves the amount it expects to spend on the Case-By-Case and Base Warranty Program repairs during the life of a vehicle, and it includes those expected costs in setting the price of the vehicle.
The Department conducted an audit of GM’s compliance with Florida’s tax laws for the 1991-2007 tax years. Pursuant to the audit, the Department assessed a use tax, penalties, and interest for the years 1991-2007 in excess of $50,000,000 on vehicle components, parts, and labor related to goodwill repairs provided by GM to its Florida customers. After exhausting its administrative remedies with the Department, GM challenged the Department’s assessments in the trial court, pursuant to section 72.011(l)(a), Florida Statutes (2011), which grants the trial court jurisdiction to hear challenges to “the legality of any assessment” of various taxes, including sales tax and use tax. After the parties filed cross-motions for summary judgment, the trial court entered a final summary judgment granting GM’s motion for final summary judgment and denied the Department’s cross-motion. In the final summary judgment, the trial court concluded that it would violate Florida law for the Department to impose a use tax on case-by-case repairs since the Case-By-Case Program was part of the original vehicle purchase, and the State had already collected tax on the full sales price of the vehicle. The trial court further concluded, in pertinent part, as follows:
I thus conclude, as the Michigan court did [in General Motors Corp. v. Department of Treasury, 466 Mich. 231, 644 N.W.2d 734 (2002)] that the right to participate in the case-by-case program and to receive any repairs performed pursuant to it, is part of the consideration received by the customer in exchange for the purchase price of the vehicle. The tax due for such repairs is thus paid as part of the sales transaction.
Accordingly, the trial court reasoned that “[t]o require GM to pay tax on the transactions would amount to double taxation or pyramiding of tax prohibited under Florida law. See section 212.12(12), Florida Statutes.”
Analysis
Because the material facts are not in dispute, “[t]he standard of review governing a trial court’s ruling on a motion for summary judgment posing a pure question of law is de novo.” Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001). The Department argues that the trial court erred in concluding that the tax for GM’s Case-By-Case Program repairs was paid at the original vehicle purchase because the right to receive goodwill repairs under the Program was not part of the consideration of that transaction. Thus, we must determine whether, at the time of their original GM vehicle purchase, customers pay for and are taxed on the right to participate in the Case-By-Case Program.
We begin with a discussion of Florida’s sales and use taxes. The sales tax is imposed when property is “sold at retail in this state.” § 212.05(l)(a), Fla. Stat. (2011). In contrast, the use tax is triggered when property is “not sold, but is used, consumed, distributed, or stored for *1195 use or consumption in this state.” § 212.05(l)(b). “The use tax was developed as a device to complement the sales tax in order to prevent evasion of the payment of the sales tax by the completion of purchases in a non-taxing state and shipment by interstate commerce into a taxing forum.” Scripto, Inc. v. Carson, 105 So.2d 775, 779 (Fla.1958). Accordingly, sales and use taxes are complementary and, when applied, result in one instance of taxation on tangible personal property, either at the point of sale or at the subsequent time of use. The “anti-pyramiding” principle is codified in several provisions of Florida’s sales and use taxes statute. See §§ 212.06(4) & 212.12(12), Fla. Stat. (2011). Specifically, section 212.06(4), provides that “there shall be no duplication” of the sales and use taxes. In addition, section 212.12(12) provides that it is the Legislature’s intent that only the end consumer should be subject to tax as follows:
It is hereby declared to be the legislative intent that, whenever in the construction, administration, or enforcement of this chapter there may be any question respecting a duplication of the tax, the end consumer, or last retail sale, be the sale intended to be taxed and insofar as may be practicable there be no duplication or pyramiding of the tax.
See L.B. Smith Aircraft Corp. v. Green, 94 So.2d 882, 837 (Fla.1957) (“emphasizing] the many provisions in the chapter designed to prevent multiple taxes on the same items”).
The Department does not dispute these principles and acknowledges that sales and use taxes are complementary and, when applied, result in one instance of taxation on tangible personal property. The Department claims, however, that the disputed assessments of use tax did not result in duplication or pyramiding of tax. We disagree. Although this issue appears to be one of first impression in Florida, the Supreme Court of Michigan and the Supreme Court of Ohio both squarely addressed this identical issue in rejecting attempts by their State taxing authorities to tax manufacturers on the value of case-by-case repairs because the State had already collected its sales tax at the time of the underlying vehicle sale. See Gen. Motors Corp., v. Dep’t of Treasury, 466 Mich. 231, 644 N.W.2d 734, 738 (2002) (holding that “replacement parts provided pursuant to the goodwill program are subject to the sales tax at the time of retail sale and are exempt from the use tax.... ”); Daimler-Chrysler Corp. v. Levin, 117 Ohio St.3d 46, 881 N.E.2d 840, 844 (2008) (“[C]ar buyers paid enough to cover goodwill repairs, without obtaining a contractual right to such repairs, and they also paid sales tax on the amount they paid for goodwill repairs. We do not believe that the legislature intended to dissuade the manufacturer from spending the money it has collected to fund those repairs, by imposing a second layer of taxation.”).
The statutory provision that was disposi-tive in Michigan was the provision of the Michigan statute that precludes the State from assessing a use tax on property that had already been subject to the sales tax. See Gen. Motors, 644 N.W.2d at 737 (citing Mich. Comp. Law § 205.94(l)(a)). A similar provision is present in Florida’s statute. See § 212.06(4). Furthermore, the Ohio Supreme Court reached the same result based on its determination that the Ohio Legislature would not have intended to “impos[e] a second layer of taxation.” Daimler Chrysler Corp., 881 N.E.2d at 844. Florida’s law provides an even stronger basis for reaching the same result, as section 212.12(12) expressly provides the Legislature’s “intent that, whenever in the construction, administration, or enforcement of this chapter there may be any question respecting a duplication of the *1196 tax, the end consumer, or last retail sale, be the sale intended to be taxed and insofar as may be practicable there be no duplication or pyramiding of the tax.”
In General Motors, the Michigan Supreme Court rejected attempts by the Michigan Department of Treasury to tax GM on the value of case-by-case or goodwill repairs because the State had already collected its sales tax at the time of the underlying vehicle sale. 644 N.W.2d at 738. The Michigan Supreme Court noted that “the manual invites customers to initiate dialogue with the dealership” and ultimately with GM “when a defect arises, ‘during or after the warranty periods.’ ” Id. at 737. Although the Michigan Supreme Court stated that “customers are not guaranteed that requested after-warranty goodwill adjustments will be made,” the Case-By-Case Program is nevertheless “a promise to hear and address customer complaints even after the written warranty expires.” Id. at 737-38.
Accordingly, the Michigan Supreme Court concluded:
[Tjhis opportunity for dialogue and possible resolution of complaints — even outside the warranty period-is a benefit flowing to purchasers of GM vehicles at the time of retail sale and, therefore, is consideration for the sale. Therefore, replacement parts provided pursuant to the goodwill program are subject to the sales tax at the time of retail sale and are exempt from the use tax....
Id. at 738 (emphasis added, footnotes omitted). We find this reasoning persuasive.
The Department argues that the “discretionary” nature of the Case-By-Case-Program sets it apart from GM’s other repair programs. We disagree. As the Michigan Supreme Court stated, “GM’s promise pursuant to its [Case-By-Case] goodwill adjustments policy, while discretionary with respect to whether there will be any ‘adjustment,’ is not discretionary regarding GM’s obligation to act reasonably and in good faith in response to a customer complaint.” 644 N.W.2d at 738. The fact that GM or its dealers have discretion in determining whether to provide any particular case-by-case repair may go to the relative value of the Program to customers. As GM argues, it does not, however, mean that customers receive nothing of value. The undisputed record evidence established that GM paid more than $293 million in repairs under the Case-By-Case Program during the audit period, averaging $17 million a year, reinforces this point. The opportunity for GM’s Florida purchasers to request and obtain these repairs provides significant value to its Florida purchasers.
Moreover, although not conclusive, the record evidence reflects that because of the large costs associated with the repair programs, including the Case-By-Case Program, GM estimates and reserves the amount it expects to spend on the Case-By-Case and Base Warranty Program repairs during the life of the vehicle, and it includes those expected costs in setting the price of the vehicle. As such, GM customers not only acquire the benefits of the Case-By-Case Program at the time of their initial vehicle purchase, they also pay for-and are assessed sales tax on-the additional costs associated with the Program at the time of the original sale. Thus, the trial court correctly concluded that the right to participate in the Case-By-Case Program and to receive repairs performed pursuant to it was part of the consideration the customer received in exchange for the purchase price of the vehicle; that the tax due for such repairs was therefore paid as part of the original sales transaction; and that the Department therefore may not lawfully impose a second tax on *1197 such repairs at the time they are performed.
The Department makes two additional arguments that the trial court’s reasoning is flawed. First, the Department argues that the implied duty of good faith exists to protect a party’s reasonable expectation and cannot be used to create a contractual obligation which does not exist. Second, it claims that any such semblance of consideration received by the consumer is illusory because GM exercises sole discretion over when to authorize goodwill repairs under the Program. We disagree and address the Department’s arguments in turn.
With regards to the Department’s first argument, a duty of good faith “must be anchored to the performance of an express contractual obligation.” Flagship Resort Dev. Corp. v. Interval Int’l, Inc., 28 So.3d 915, 924 (Fla. 3d DCA 2010). “There can be no cause of action for a breach of the implied covenant absent an allegation that an express term of the contract has been breached.” Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 896 So.2d 787, 792 (Fla. 2d DCA 2005) (internal quotations omitted). The Department’s argument that there is no underlying contractual obligation to which the duty of good faith can attach simply ignores the relevant provisions of the Case-By-Case Program and the warranty manuals.
Although the language of earlier manuals from the 1990’s is less explicit than the 2002 manual, those manuals also plainly invite customers to bring vehicle defects to the dealer or GM or both “during or after” the warranty period, and they create express procedures for doing so. As noted by GM, these manuals are part of the vehicle purchase transaction and there is no question that they form an enforceable agreement between GM and the vehicle purchaser. As previously noted, the 2002 warranty manual provides:
Should you ever encounter a problem during or after the limited warranty period that is not resolved, talk to a member of dealer management. Under certain circumstances, General Motors and/or GM dealers may provide assistance after the limited warranty period has expired when the problem results from a defect in material or workmanship. These instances will be reviewed on a case by case basis. If your problem has not been resolved to your satisfaction, follow the Customer Satisfaction procedures as outlined on page 25 of this booklet.
(emphasis added).
These provisions are consistent with an enforceable right. The warranty manual (a) expressly directs customers to contact GM or a GM dealer with vehicle-related problems “during or after” the warranty period; (b) it notifies customers that “assistance” may be available “after the limited warranty period has expired when the problem results from a defect in material or workmanship”; and (c) it promises expressly that claims for such assistance “will be reviewed on a case by ease basis.” We agree with GM that absent these or similar undertakings, GM would be free to simply ignore any post-warranty complaint that was presented to it. The manual, however, contains an express promise that such claims “will be reviewed on a case by case basis,” and it provides an express set of procedures for customers to use to invoke the case-by-case process.
Furthermore, as the Michigan Supreme Court aptly explained, “GM’s promise pursuant to its [case-by-case] goodwill adjustments policy, while discretionary with respect to whether there will be any ‘adjustment,’ is not discretionary regarding *1198 GM’s obligation to act reasonably and in good faith in response to a customer complaint.” 644 N.W.2d at 738. In other words, GM does not have discretion whether to address a customer’s complaint because the warranty manual language expressly provides that claims for such assistance “will be reviewed on a case by case basis.” Consequently, a duty of good faith is anchored to the performance of an express contractual obligation, which is reviewing a customer’s complaint. Thus, the trial court correctly held that these are express contractual undertakings that were subject to the implied duty of good faith and fair dealing.
Turning now to the Department’s second argument that the discretionary aspect of the repair decision under the Case-By-Case Program renders any “semblance of consideration ... illusory.” It is true that whether or not a particular goodwill repair will be provided is a matter of discretion generally exercised by the dealer within the dealer’s empowerment limits and is subject to the guidelines provided by GM. In this respect, the Case-By-Case Program does not create a legal obligation like the terms of GM warranties. However, “where the terms of the contract afford a party substantial discretion to promote that party’s self-interest, the duty to act in good faith nevertheless limits that party’s ability to act capriciously to contravene the reasonable contractual expectations of the other party.” Cox v. CSX Intemodal, Inc., 732 So.2d 1092, 1097-98 (Fla. 1st DCA 1999). This rule applies, as the trial court properly found, “even where the contractual obligation is one subject to the ‘sole discretion’ of one of the parties.” (citing Sepe v. City of Safety Harbor, 761 So.2d 1182, 1184 n. 2 (Fla. 2d DCA 2000) (noting that “[njumerous cases arising in many varied contexts apply the implied duty of good faith and fair dealing to an obligation that is exercised with sole discretion”)). Therefore, we find, in accordance with the trial court, that GM has a duty to exercise its discretion under the above provision in good faith, consistent with the purported goal of addressing defects in materials or workmanship.
Moreover, as previously noted, the undisputed evidence established that GM paid more than $293 million in repairs under the Case-By-Case Program during the audit period, averaging $17 million a year. “[W]e can easily envision a ‘rational, self-interested market participant’ paying something for a benefit estimated to provide more than [$17] million in annual benefits to consumers.” Gen. Motors, 644 N.W.2d at 739. This evidence demonstrates that repairs under the Case-By-Case Program are not performed randomly or at a dealer’s whim, but are the product of good-faith judgments as to whether a particular condition that arises after the end of the basic warranty is one that would not be expected to occur under ordinary usage.
Conclusion
For the foregoing reasons, we conclude that the right to participate in the Case-By-Case Program and to receive repairs performed pursuant to it was part of the consideration GM’s customers received in exchange for the purchase price of their GM vehicles. Accordingly, the trial court did not err in concluding that the tax due for such' repairs was paid as part of the original sales transaction, and that to impose a second round of tax on the transaction would amount to double taxation or pyramiding of tax prohibited under Florida law.
AFFIRMED.
WOLF and VAN NORTWICK, JJ., concur.