**FOCUS MANAGEMENT GROUP USA, INC., Plaintiff,**

v.

**Edmund KING, Defendant.**

Case No. 8:13–CV–1696–T–35–AEP

United States District Court,
M.D. Florida,
**Tampa Division.**

Signed March 18, 2016

Brett L. McClure, Kasey J. Curtis, Reed Smith, LLP, Los Angeles, CA, Eric Scott Golden, Burr & Forman, LLP, Orlando, FL, Nicole Soto, Burr & Forman, LLP, Tampa, FL, Richard A. Robinson, Reed Smith, LLP, Wilmington, DE, for Plaintiff.

Jason Kenneth Kellogg, Brenden Donald Soucy, Levine, Kellogg, Lehman, Schneider & Grossman, LLP, Miami, FL, for Defendant.

## *ORDER*

MARY S. SCRIVEN, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** comes before the Court for consideration of Plaintiff Focus Management Group USA, Inc.'s Motion for Partial Summary Judgment (Dkt.82), Defendant Edmund King's Response in Opposition (Dkt.97), Plaintiff's Reply (Dkt.100), and the Parties' Stipulation of Agreed Material Facts (Dkt.98). Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court orders that the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff Focus Management Group USA, Inc. ("Focus") alleges that Defendant Edmund King ("King") violated a non-competition/non-solicitation clause in his employment agreement. King, on the other hand, alleges that Focus breached the agreement first by failing to pay him compensation to which he was entitled. The relevant facts follow.

Focus is a professional services firm that provides consulting services to underperforming companies. (Dkt. 98 at ¶ 1). On April 15, 2008, Focus hired King as a professional consultant. (*Id.* at ¶ 2). The terms of King's employment were governed by an offer letter that King signed on April 2, 2008, and a written employment agreement that King signed on April 15, 2008. (*Id.*).

In the offer letter, Focus agreed to pay King an adjusted starting annual salary of $180,000, "performance related compensation," and benefits. (*Id.* at ¶ 4; Dkt. 83–1 at 5). The offer letter described the performance-related compensation as "accrued annually over period December—November, paid at year end, computed along lines outlined in the attached illustration, discretionary in nature." (Dkt. 83–1 at 5). Attached to the offer letter was a sample formula for calculating the performance-related compensation. (Dkt. 98 at ¶ 5). The formula was to take into consideration factors such as King's annual sales, his direct billings, his managed billings, and the overhead burden attributable to him. (*Id.*).

The employment agreement contained a choice-of-law provision and a non-solicitation/non-competition clause ("non-compete clause"). (*Id.* at ¶ 8). The choice-of-law provision stated that King's employment would be governed by Florida law. The non-compete clause provided that King would not, for a period of one year following the termination or expiration of his employment with Focus:

Solicit or engage, directly or indirectly (either as an employee, member, officer, director, partner, shareholder, owner, lender, investor, consultant or independent contractor), in providing services of the kind provided by [Focus] as of the Termination Date for those clients of [Focus] for whom [Focus]: (i) is engaged in providing services as of the Termination Date; or (ii) has provided services within the twelve (12) month period prior to the Termination Date; or (iii) has contacted, as of the Termination Date, for the purpose of offering to provide services[.]

(*Id.*).

In January 2010, Downey Regional Medical Center–Hospital, Inc. ("Downey") retained Focus to provide services in connection with Downey's efforts to restructure its business through Chapter 11 of the United States Bankruptcy Code. (*Id.* at ¶ 10). Focus credited King with 30% of the "sales" associated with the Downey account for his role in securing Downey as a client. (*Id.* at ¶ 11). The "sales" credit was one of the factors input into the formula that Focus used to calculate King's performance-related compensation. (*Id.*).

In early 2012, Gerry Paez, one of the other consultants who had been assigned sales credit for helping Focus secure Downey as a client, resigned. (*Id.* at ¶ 14). King maintains that the portion of Downey's sales that Paez received credit for was improperly assigned to the "house," rather than reallocated among the other employees who were assigned credit for Downey's sales. (*Id.*).

In March 2012, Downey emerged from bankruptcy and retained Focus to provide additional services under a new work authorization. (*Id.* at ¶ 15). Focus agreed to provide Downey with a full-time professional capable of acting as Downey's Interim Chief Financial Officer ("CFO"). In return, Downey agreed to pay Focus a fixed rate of $10,000 per week. (*Id.*). Focus selected King to act as Downey's Interim CFO. (*Id.* at ¶ 16).

While King was employed by Focus, the company changed its performance-related compensation program. (*Id.* at ¶ 12). In particular, Focus changed the order in which an employee's overhead threshold was applied to the employee's sales, direct billings, and managed billings figures. Focus also began applying a "performance multiplier" that took into account how Focus had performed in relation to its sales goals. (*Id.*).

In March and May 2012, Focus sent King his February and March "scorecards," which were documents intended to show King the performance-related compensation he was eligible to receive at that point in time. (*Id.* at ¶ 17). However, the scorecards specifically stated that the compensation was "contingent upon final declaration by Focus President before payable." (*Id.*). · The Parties disagree about whether the scorecards reflect the revised methodology for calculating performance-related compensation. (*Id.* at ¶ 17).

In early 2013, Focus sent King his year-end scorecard for 2012. (*Id.* at ¶ 20). The scorecard reflected that King's billings and sales rendered him eligible to earn performance-related compensation of $80,458. However, because Focus had only reached 73.5% of its projected sales goals for the 2012 year, Focus determined that King would receive a total of $59,148. The methodology used to calculate King's 2012 performance-related compensation was also used to calculate the performance-related compensation for other Focus em-

ployees. (*Id.*). King contends, however, that the decision to apply a corporate performance multiplier to reduce his accrued bonus was not communicated to him prior to the reduction. (Dkt. 97 at 16–17).

In February 2013, while King was still employed at Focus, he created Peninsula Healthcare Management, LLC ("Peninsula"), a Nevada limited liability company. (Dkt. 98 at ¶ 19). Peninsula is a professional services company that generates revenue through King's provision of professional consulting services to Peninsula's clients. King and his wife are Peninsula's sole employees. (*Id.*).

On March 1, 2013, King resigned from Focus, effective March 15, 2013. (*Id.* at ¶ 21). On March 22, 2013, King's newly-created company, Peninsula, entered into a consulting agreement with Downey under which Peninsula agreed to provide King to Downey to act as its Interim CFO—the same role King was fulfilling while employed by Focus. (*Id.* at ¶ 22). King rendered services to Downey through Peninsula until Downey's day-to-day operations and management were assumed by a company interested in acquiring Downey. (*Id.* at ¶ 23).

Invoking this Court's diversity jurisdiction, Focus filed the instant action on June 28, 2013. (Dkt.1). On August 19, 2013, Focus filed its Amended Complaint, which is the operative complaint. (Dkt.12). Focus asserts four causes of action against King based on his alleged dealings with Downey: breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), tortious interference with contractual relations (Count III), and tortious interference with prospective economic advantage (Count IV). King, in turn, asserts five counterclaims against Focus, based on what he asserts was a unilateral and improper reduction to his performance-related compensation: breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), declaratory judgment (Count III), failure to pay wages in violation of California Labor Code (Count IV), and unjust enrichment (Count V). (Dkt.46). King also asserts nine affirmative defenses. (Dkt.47).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir.2009) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir.2007)). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

Evidence is to be viewed "in the light most favorable to the non-moving party." *Fennell*, 559 F.3d at 1216 A moving party may discharge its burden on a motion for summary judgment by showing or pointing out to the Court "that there is an absence of evidence to support the non-moving party's case." *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir.2001) (internal quotation marks omitted).

When a moving party has discharged its burden, the non-moving party must designate specific facts that demonstrate there is a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir.2006). The

party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ... the court may grant summary judgment if the motion and supporting materials ... show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

In this motion, Focus seeks judgment in its favor on the following portions of the Parties' claims, counterclaims, and affirmative defenses: (1) King's liability on Focus's claim for breach of contract; (2) relatedly, King's first affirmative defense of "first material breach," his first counterclaim for breach of contract, and his fourth counterclaim for failure to pay wages; (3) relatedly, King's second counterclaim and second affirmative defense, alleging a breach of the implied covenant of good faith and fair dealing; and (4) King's fifth counterclaim for unjust enrichment, which is pled in the alternative.

 The Parties appear to agree that Florida law governs this dispute.[1] The Court addresses Focus's arguments in turn.

### A. Breach of contract

In Count I of the Amended Complaint, Focus alleges that King breached the non-compete clause in his employment agreement by accepting a position through Peninsula with Downey that was similar to the one he held when he worked for Downey while employed by Focus. (Dkt. 12 at ¶¶ 25–30).[2] In response to Focus's motion, King claims that Focus committed a prior breach of the employment agreement, discharging King's contractual obligations under the non-compete clause. *See Bradley v. Health Coalition, Inc.,* 687 So.2d 329, 333 (Fla. 3d DCA 1997) (holding that an employer's failure to pay commissions could serve as a valid defense to enforcement of a non-compete agreement); *accord Benemerito & Flores, M.D.'s, P.A. v. Roche,* 751 So.2d 91, 93–94 (Fla. 4th DCA 1999). Specifically, King asserts that Focus deviated from the formula for calculating commissions specified in the offer letter, and/or failed to transfer half of Paez's billings to King for purposes of calculating his compensation. (Dkt. 47 at 8–9). King was paid $59,148 for the period ending November 30, 2012, and he alleges that he

---

**1.** A court exercising diversity jurisdiction applies the choice-of-law rules of the forum state. *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.,* 550 F.3d 1031, 1033 (11th Cir. 2008). Generally, Florida courts enforce choice-of-law provisions in a contract "unless the law of the chosen forum contravenes strong public policy." *Walls v. Quick & Reilly, Inc.,* 824 So.2d 1016, 1018 (Fla. 5th DCA 2002) (internal quotation marks omitted). In response to Focus's motion, King does not challenge the application of Florida law pursuant to the employment agreement's choice-of-law provision.

**2.** The Court notes that King's seventh affirmative defense alleges that Focus's breach-of-contract claim fails because the employment agreement's restrictive covenants are void as against California public policy. (Dkt. 47 at 12–13). According to Focus, King "appears to have abandoned this issue," following an unfavorable ruling in a related California case. (Dkt. 82 at 15 n.1). Focus does not, however, move for summary judgment on this affirmative defense. Focus also does not move for summary judgment on King's counterclaim for declaratory judgment, which asserts that the restrictive covenants in the employment agreement, including the non-compete clause, are unenforceable. (Dkt. 46 at ¶ 39–45).

was entitled to approximately \$300,000. (*Id.* at 8).

King asserts a separate counterclaim for breach of contract based on the same facts asserted in his affirmative defense regarding Focus's claim for breach of contract. (Dkt. 46 at ¶ 32). Thus, both King's affirmative defense and his counterclaim require King to prove that Focus materially breached the employment agreement. *J.J. Gumberg Co. v. Janis Servs., Inc.,* 847 So.2d 1048, 1049 (Fla. 4th DCA 2003) (holding that a claim for breach of contract requires evidence of a material breach).

Focus also seeks summary judgment on King's fourth counterclaim, which alleges that Focus failed to pay King wages in violation of the California Labor Code. (Dkt. 46 at ¶¶ 46–55). Neither party includes any discussion of the elements of this claim under California law, or the viability of such a claim given the Florida choice-of-law provision. Consequently, the motion is deemed withdrawn. Rather than addressing the viability of King's claim brought under the California Labor Code, the Court limits the following discussion to assessing whether King has established a prior material breach by Focus under Florida contract law.

To demonstrate a material breach, King must prove that Focus "failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties." *Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker,* 160 So.3d 955, 960 (Fla. 5th DCA 2015). More fundamentally, King must demonstrate that he and Focus "mutually assented to a certain and definite proposition and left no essential terms open" and

that Focus breached that proposition. *Plumbing Serv. Co. v. Progressive Plumbing, Inc.,* 952 So.2d 1211, 1213 (Fla. 5th DCA 2007) (internal quotation marks omitted). The source of that claimed proposition is the offer letter by which Focus secured the employment of King. The Court therefore addresses whether the offer letter provided "a certain and definite proposition" governing King's performance-related compensation.

The offer letter, written by Focus's President, Tim Pruban, stated in relevant part:

I would propose to bring you on board as a fulltime employee with an effective start date of Monday, April 14, 2008. I believe that the compensation structure outlined in the Exhibit 1 illustration below will yield aggregate compensation opportunities that should be in line with your expectations:

- Base annual salary—\$180,000, paid bi-weekly.

- Performance related compensation—accrued annually over period December—November, paid at year end, computed along lines outlined in the attached illustration, discretionary in nature.

- [Group health insurance]

- [401(k)-equivalent program]

(Dkt. 83–1 at 5). Attached to the offer letter is "Exhibit 1," which sets forth a sample calculation for King's performance-related compensation. (*Id.* at 6). The sample calculation shows a projected commission of \$251,830, in addition to King's base salary of \$180,000. (*Id.*).

Price or compensation is typically an essential term of a contract, but a formula may suffice where it is sufficiently

specific and does not leave computation solely to one party's discretion. *Martin v. Jack Yanks Const. Co.*, 650 So.2d 120, 121 (Fla. 3d DCA 1995). The offer letter provided that the performance-related compensation would be "computed along lines outlined in the attached illustration." (Dkt. 83–1 at 5). The Parties do not meaningfully address whether this language is specific or definite enough to demonstrate mutual assent to King's compensation.

Focus instead argues that, because the offer letter also expressly described the performance-related compensation as "discretionary in nature," it did not establish an enforceable contractual right. In support, Focus places primary reliance on *Parrish v. General Motors Corporation*, in which the court held that a bonus plan did not provide the employee with a right to a bonus enforceable at law. 137 So.2d 255 (Fla. 2d DCA 1962). In *Parrish*, the bonus plan expressly provided, in part, that the employer "shall have discretion with respect to the determination of each bonus award." *Id.* at 256. The court held as follows:

> [T]he bonus plan involved in the instant case was not so contractually interwoven with the terms and conditions of the plaintiff's employment as to confer upon him a vested right to a bonus award for the year 1956, even though he was employed by the defendant and served through that period. A bonus, under the plan described herein, partakes of gratuity while lacking essential elements of contractual obligation. Under said

plan an employee is at all times charged with knowledge that a bonus award may be granted or withheld as to any employee at the discretion of the employer. The mere possibility or prospect of a bonus, without more, can not be regarded as a condition of employment conferring a right enforceable at law.

*Id.* at 258.

The Court notes that, in contrast to *Parrish*, King's performance-related compensation was interwoven with the terms of Plaintiff's employment. According to the offer letter, the performance-related compensation was part of the "aggregate compensation opportunities" offered to meet King's "expectations." (Dkt. 83–1 at 5). Focus also provided a sample formula for King's review. (*Id.* at 5–6).

While King's performance related compensation was also expressly described as "discretionary in nature,"[3] King argues that any discretion Focus had with respect to his bonus, which by the terms of the offer letter "accrued annually over period December—November," could not be exercised retroactively after the bonus accrued and without prior notice. King argues that when a right accrues it "come[s] into existence as an enforceable claim or right." (Dkt. 97 at 6) *See Malone v. American Business Information, Inc.*, 264 Neb. 127, 647 N.W.2d 569 (2002) (finding that management had discretion to alter or change performance based commission plan but could not apply changes retroactively with respect to commissions that had already accrued).

Therefore, the Court finds that unlike cases in which the duty to pay a bonus and

---

**3.** Although King asserts that "discretionary in nature" means that his commissions had a "discretionary character," while Focus asserts that the commissions had a "discretionary quality" (Dkt. 82 at 18; Dkt. 97 at 12), these definitions are essentially consistent. King agrees that the term is not ambiguous and should not be construed with reference to extrinsic evidence. (Dkt. 97 at 5 n.2).

the method for calculating it were wholly within the discretion of the employer and essentially illusory in nature, King's bonus was definite as to methodology, expressly offered as an incentive to secure him as an employee, and the bonus was definite as to the time of its accrual. King's bonus was only uncertain as to the ultimate discretion to pay, and, as noted, courts have found that this discretion is constrained once the right to payment has accrued or vested. The Court also finds that although the performance related compensation was described in the offer letter as discretionary in nature, there is substantial evidence of record that there was an agreement to fairly consider King for a bonus. By way of example, in the ensuing months, the methodology for calculating King's accruing bonus was essentially consistent with the terms of the employment letter and it was communicated to King by way of scorecards.

The Court notes that King has not sought summary judgment on the question of whether Focus breached the contract by failing to pay King a bonus that had already accrued. Consequently, the Court does not decide this question as a matter of law. The question concerning whether King can establish that the right to the bonus had accrued and, therefore, Focus's failure to pay the bonus in accordance with the offer letter constituted a breach of contract shall remain for trial.

■ · In this regard, as explained below, the Court finds that King raises a genuine issue of material fact as to whether Focus breached the implied covenant of good faith and fair dealing in exercising its discretion over King's performance-related compensation. "[T]he general rule is that a material breach of the Agreement allows the non-breaching party to treat the breach as a discharge of his contractual liability." *Colucci v. Kar Kare Automotive Group, Inc.,* 918 So.2d 431, 437 (Fla. 4th DCA 2006). Therefore, if, as King alleges, Focus ,materially breached the agreement first, then King has a valid defense to Focus's claim for breach of contract. *See Jones v. Warmack,* 967 So.2d 400, 402 (Fla. 1st DCA 2007) ("If one party to an agreement has breached the agreement, the other party's failure to continue with the agreement is not considered a default of the contract."). Because King pleads breach of contract for Focus's failure to properly pay an accrued bonus and breach of the implied covenant as affirmative defenses to Focus's breach-of-contract claim, Focus's motion for summary judgment is **DENIED**, to the extent that Focus seeks judgment as to King's liability on Focus's breach-of-contract claim.

### B. Implied covenant of good faith and fair dealing

King's second counterclaim alleges that Focus breached the implied covenant of good faith and fair dealing by unilaterally and arbitrarily decreasing King's 2012 commission and/or by failing to credit Paez's Downey-related billings to King. (Dkt. 46 at ¶ 37). King also pleads this as his second affirmative defense to Focus's breach-of-contract claim. (Dkt. 47 at 9–11) Focus does not dispute · that a breach of the implied covenant of good faith and fair dealing is a viable affirmative defense to its breach-of-contract claim. *See, e.g., Ament v. One Las Olas, Ltd.,* 898 So.2d 147, 149 (Fla. 4th DCA 2005) (analyzing breach of the implied duty of good faith and fair dealing as a defense to a breach-of-contract claim).

■ In Florida, every contract contains an implied covenant of good faith and

fair dealing, which requires the parties to "follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir.2005); *Sepe v. City of Safety Harbor*, 761 So.2d 1182, 1183–84 (Fla. 2d DCA 2000). The implied covenant is "a gap-filling default rule," which "is usually raised when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards." *Publix Super Mkts., Inc. v. Wilder Corp. of Del.*, 876 So.2d 652, 654 (Fla. 2d DCA 2004). "Thus, where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097–98 (Fla. 1st DCA 1999).

■ As Focus points out, "[a] breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo, Inc.*, 420 F.3d at 1151. For purposes of this claim, a specific contractual obligation exists: Focus offered King performance-related compensation in order to "yield aggregate compensation opportunities that should be in line with [King's] expectations," and the Parties agreed that King's performance-related compensation would be "discretionary in nature." (Dkt. 83–1 at 5).

Accordingly, Focus owed King a duty to exercise its contractually-reserved discretion in good faith in order to protect King's reasonable expectations. *See Dep't of Rev-*

*enue v. Gen. Motors LLC,* 104 So.3d 1191, 1197–98 (Fla. 1st DCA 2012) (explaining that, although automobile manufacturer had no legal obligation to make a post-warranty repair, it had discretion in assessing whether a repair should be made, and the exercise of that discretion, itself, was subject to the implied covenant); *Cox,* 732 So.2d at 1097–98 (applying implied covenant where contract afforded discretion to one party, despite the absence of a viable breach-of-contract claim). Thus, assuming that the bonus had not accrued such that Focus retained its discretion concerning whether to pay the bonus, it was obligated to exercise its discretion in good faith. *See Sepe,* 761 So.2d at 1186 (even where contract affords one party sole discretion, "sole discretion does not permit a party to make a discretionary decision that violates the covenant of good faith"); *Community Design Corp. v. Antonell,* 459 So.2d 343, 344–45 (Fla. 3d DCA 1984) (finding that although president's promise of bonus to employees if drawings were completed on time left the amount of the bonus to be determined by recommendation of vice-president, "[o]nce the drawings were completed, [the defendant's] contractual duty to act in good faith in recommending a bonus for those who qualified arose"); *In re Herman,* 495 B.R. 555, 587 (Bankr.S.D.Fla.2013) (citing *Wyss v. Inskeep,* 73 Or.App. 661, 699 P.2d 1161 (1985), *review denied,* 300 Or. 64, 707 P.2d 582 (1985) (applying analogous contractual principles under Oregon law and holding that executive was entitled to unpaid bonus, where amount of bonus pool could be determined by arithmetical calculation, and although allocation of pool to individual employees was left to discretion of executive committee, exercise of discretion was not unlimited but was subject to good faith requirement)).

The Court rejects Focus's reliance upon *OneSource Facility Services, Inc. v. Mosbach*, in which the court declined to apply the implied duty of good faith and fair dealing, reasoning that no enforceable contract existed. 508 F.Supp.2d 1115, 1123 n. 5 (M.D.Fla.2007). In *OneSource*, the terms of a written bonus plan were held to be unenforceable for two reasons: the bonus plan was contained in a separate document that was not part of the plaintiff's employment contract, and even if the bonus plan were part of the plaintiff's employment contract, the employer retained discretion to award bonuses, rendering illusory any promise to pay a bonus. *Id.* at 1121–24. Here, by contrast, Focus does not dispute the enforceability of the offer letter, and the performance-related compensation was specifically offered to meet King's "expectations" regarding his "aggregate compensation opportunities." Accordingly, under the authority of *Sepe* and *Cox*, the Court finds that the performance-related compensation, while discretionary, was interwoven into the contract and thus subject to the implied covenant of good faith and fair dealing. *See Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290–92 & n. 3 (11th Cir.2001) (noting that the proper inquiry was to what extent, if any, the implied covenant modified the broad discretion afforded under a "best judgment" clause, despite the absence of a viable breach-of-express-contract claim).

Thus, the Court turns to King's contention that Focus breached the implied covenant of good faith and fair dealing in this case. To prevail on this point, King must demonstrate that Focus's discretionary decision regarding his performance-related compensation was arbitrary or capricious, such that "no reasonable party in the position of [Focus] would have made the same discretionary decision [Focus] made." *Sepe*, 761 So.2d at 1185; *Publix*, 876 So.2d at 655; *Cox*, 732 So.2d at 1098. Specifically, King must demonstrate that Focus acted arbitrarily or capriciously in paying King a bonus of $59,148 and/or in failing to credit Paez's sales to King when Paez resigned. (Dkt. 47 at ¶ 37). For the reasons explained below, the Court finds that issues of fact preclude summary judgment.

According to Focus's Chief Operating Officer, Michael Doland, the company decided to pay smaller bonuses in 2012 because Focus lost money in 2010 and 2011 and only made 73.5% of its sales target for 2012. (Dkt. 83 at ¶¶ 2, 12, 17). The changes were implemented as to all employees, not just King. (*Id.* at ¶ 17). As for refusing to credit Paez's sales to King, Doland explains that it was standard practice to assign sales to the "house" after an employee resigned, rather than reallocating the sales to other employees. (*Id.* at ¶ 13).

In response, King argues that Focus acted in bad faith because Pruban, Focus's President, testified that the term "discretionary in nature" meant that "[t]he company as a whole has to make profits. And if it does, then bonuses—again, it's a bonus. So the company has to make money." (Dkt. 97–5 at 15). Pruban testified that Focus had a loss in 2012. (*Id.* at 41). By contrast, Doland testified that Focus had a profit in 2012. (Dkt.99). Based on Doland's testimony, King maintains that there is an issue of fact as to whether Pruban acted arbitrarily in reducing his performance-related compensation.

In addition, King argues that, when he called Doland to discuss the 2012 interim scorecards, Doland did not tell him that

the commission formula had been changed for 2012. (Dkt. 97–8 at ¶ 13). Instead, Doland told King he would correct the scorecards. (*Id.*). King asserts that a reasonable factfinder could determine that Focus withheld this information because it did not want to alienate King and lose Downey as a client. King also suggests that Pruban, as the sole shareholder of Focus (Dkt. 97–5 at 8), reaped the benefits of refusing to pay King his expected compensation.

In reply, Focus does not dispute that the company was profitable in 2012, contrary to Pruban's testimony. Instead, Focus argues that it was the change to the computation of performance-related compensation effective for all employees that allowed Focus to profit. (Dkt. 100 at 6, 17). However, Focus cites no record evidence supporting that statement. Rather, Focus asserts that it is "self-evident" from the company's 2012 profit figures that it would have continued to lose money had Focus not reduced its bonuses across the board. (Dkt. 100 at 17 (citing Dkt. 99 at 3 [4])). At this juncture, it is not appropriate for this Court to draw such an inference in Focus's favor.

Based on the foregoing, King points to sufficient record evidence to create a genuine dispute as to whether Focus acted arbitrarily or capriciously in setting his performance-related compensation. *Cox*, 732 So.2d at 1098. As a result, Focus fails to demonstrate entitlement to judgment as a matter of law on King's counterclaim and affirmative defense alleging breach of the implied covenant of good faith and fair dealing.

### C. Unjust enrichment

Finally, Focus moves for summary judgment on King's counterclaim for unjust enrichment, which King pleads in the alternative. (Dkt. 46 at ¶ 57). Focus argues that an unjust enrichment claim is precluded when an express contract exists concerning the same subject matter. *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So.2d 696, 697 (Fla. 1st DCA 2008); *Zarrella v. Pac. Life Ins. Co.*, 755 F.Supp.2d 1218, 1227 (S.D.Fla.2010). In particular, Focus asserts that it is undisputed that an express contract exists on the subject of King's employment and his unjust enrichment claim is therefore barred.

In response, King agrees that, to the extent the employment agreement "is a valid, nonillusory and binding contract," the claim should be dismissed. (Dkt. 97 at 24). King provides no argument suggesting that the contract is not binding or valid. Accordingly, Focus's motion is granted, to the extent that the counterclaim for unjust enrichment is dismissed.

### IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt.82) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) The motion is **GRANTED** as to Defendant's counterclaim for unjust enrichment (Dkt. 46 at ¶¶ 56–61), to the extent that the counterclaim is dismissed;

(2) The motion is **DENIED** as to Defendant's counterclaim for breach of contract (Dkt. 46 at ¶¶ 30–33) and as to Defendant's first affirmative defense alleging "first material breach" (Dkt. 47 at 7–9);

(3) The motion is **DENIED** as to Defendant's counterclaim for breach of the

---

4. Pursuant to this Court's July 13, 2015, Order (Dkt.96), the profit figures were filed under seal (Dkt.99).

implied duty of good faith and fair dealing (Dkt. 46 at ¶¶ 34–38), and as to Defendant's second affirmative defense alleging breach of the implied duty of good faith and fair dealing (Dkt. 47 at 9–11);

(4) The motion is **DEEMED WITH-DRAWN** as to Defendant's counterclaim for failure to pay wages in violation of the California Labor Code (Dkt. 46 at ¶¶ 46–55); and

(5) The motion is **DENIED** as to Plaintiff's claim for breach of contract (Dkt. 12 at ¶¶ 24–32).

**DONE and ORDERED** in Tampa, Florida, this 18th day of March, 2016.