Weaver, J.
Plaintiff, General Motors Corporation (gm), appeals from the Court of Appeals decision that defendant, Department of Treasury, could impose use tax[1] on the vehicle components and parts plaintiff provided to customers as part of plaintiff’s goodwill adjustments policy. We reverse the decision of the Court of Appeals and hold that assessment of use tax on the goodwill adjustments was improper because they were taxed pursuant to the General Sales Tax Act[2] when customers purchased vehicles at retail.
I
When customers purchase new GM automobiles, they are provided with a GM limited manufacturer’s warranty. These limited manufacturer’s warranties provide, in pertinent part, for the replacement of defective parts of the automobile under certain circumstances. They also generally provide coverage for an expressly stated length of time, subject to earlier expiration, if the vehicle is driven for a certain number of miles. The department acknowledges that parts provided under these limited warranties are not sub *234 ject to use tax because the customers paid for the right to replacement parts under the warranties at the time of the retail sale.
In addition to the limited warranties, GM provides a more open-ended “goodwill” adjustment policy under which GM will, on a discretionary basis, pay for replacement parts for GM vehicles even after the limited warranty period has expired. Although not referred to by name as a “goodwill adjustment policy,” notice of this policy is contained in the General Motors warranty manual provided to customers at the time of sale. In this regard, the manual provides:
Should you ever encounter a problem during or after the warranty periods that is not resolved, talk to a member of dealer management. If the problem persists, follow the additional procedure outlined in “Owner Assistance,” on page 16 of this booklet. [Emphasis added.]
The Owner Assistance section of the manual outlines a “Customer Satisfaction Procedure.” It states that problems will “normally” be resolved by the dealer’s sales or service departments.[3] However, if a concern is not resolved at that level, the manual rec *235 ommends first discussing the problem with the dealership management. If the problem is not resolved by the dealer management, customers are told to contact GM directly. A customer dissatisfied with the outcome of the procedure may elect arbitration. The manual states that, while a customer is not bound to accept the result of the arbitration proceeding, GM will “generally” agree to be bound by it even though it reserves the right to terminate its participation in the arbitration program.[4]
The department conducted an audit of gm’s compliance with Michigan tax laws for the period of January 1, 1986, through December 31, 1992. As a result of the audit, the department assessed against GM use taxes and interest of $5.5 million on the vehicle components and parts provided by GM to customers as goodwill adjustments. The department had not previously assessed such a tax. During the audit period, GM customers in Michigan obtained $82 million in components and parts under the goodwill policy.
Gm appealed the assessment to the Court of Claims. In pertinent part, GM alleged that the department lacked the statutory authority to impose use tax on goodwill adjustments because sales tax was imposed on the cost of the goodwill adjustments when vehicles were sold at retail. However, the Court of Claims disagreed with gm’s position and granted summary disposition in favor of the department pursuant to MCR 2.116(C)(10), holding, in relevant part, that the transfer of parts under the goodwill program is sub *236 ject to use tax. The Court of Appeals affirmed regarding this issue,[5] concluding that “plaintiff’s dealers were not obligated to provide all customers with goodwill adjustments” and, therefore, that the “value of the goodwill program was not included in the gross proceeds arising from the retail sales of plaintiff’s vehicles.”[6] The Court of Appeals also emphasized its view that the purchasers of gm vehicles did not obtain “any enforceable rights in the goodwill program.” We granted leave to appeal.
II
Because the essential facts are not in dispute, we are presented with a question of law: whether replacement parts provided to customers at gm’s expense through the goodwill program are independently subject to Michigan’s use tax in connection with the transfer of the parts. We review questions of law de novo. Kelly v Builders Square, Inc, 465 Mich 29, 34; 632 NW2d 912 (2001). This is the same standard of review applicable to the grant of a motion for summary disposition. MacDonald v PKT, Inc, 464 Mich 322, 332; 628 NW2d 33 (2001).
*237 III
The sales tax and the use tax are interrelated. Sales tax is imposed by the General Sales Tax Act (gta) on the gross proceeds of a business. MCL 205.52(1). The gta defines “[g]ross proceeds” as the “amount received in money, credits, subsidies, property, or other money’s worth in consideration of a sale at retail____” MCL 205.51(l)(i). In contrast, pursuant to the Michigan Use Tax Act (uta), use tax is generally imposed on the privilege of “using, storing, or consuming tangible personal property.” MCL 205.93(1).
Gm contends that the cost of its goodwill adjustments is exempt from use tax under § 4(1) (a) of the UTA. MCL 205.94(l)(a) provides that “[property sold in this state on which transaction a tax is paid under the general sales tax act” is exempt from the use tax “if the tax was due and paid on the retail sale to a consumer.” Thus, our inquiry is whether “tax was due and paid” pursuant to the gta on the cost of the goodwill adjustments when vehicles were sold at retail.
The sales and use taxes, while imposed in different ways, do not operate in isolation. Rather, provisions of the uta and the gta are supplementary and complementary. World Book, Inc v Treasury Dep’t, 459 Mich 403, 408; 590 NW2d 293 (1999); Elias Bros Restaurants, Inc v Treasury Dep’t, 452 Mich 144, 153; 549 NW2d 837 (1996). Uta § 4(1)(a)’s exemption is an expression of a legislative intent to avoid pyramiding of sales and use tax. Elias Bros, supra. In other words, a transfer of property that has already been subjected to Michigan’s sales tax is not subject to this state’s use tax. As directed by § 4(l)(a), we examine the provisions of the GTA to determine whether tax *238 was paid on the goodwill adjustment at the retail sale to a customer or whether the department’s assessment of use tax was appropriate.
The gta defines a “sale at retail” as “a transaction by which the ownership of tangible personal property is transferred for consideration, if the transfer is made in the ordinary course of the transferor’s business and is made to the transferee for consumption or use, or for any purpose other than for resale . . . .” MCL 205.51(1)(b). The question is thus whether the goodwill adjustment policy is consideration flowing to customers when they purchase a gm vehicle or merely an illusory promise. Stated otherwise, we examine whether the cost of the goodwill adjustment policy is included in the retail price of GM vehicles as something that is purchased by customers.
At the time of retail sale, gm customers receive an owner’s manual. The manual invites customers to initiate a dialogue with the dealership when a defect arises, “during or after the warranty periods.” The manual states the goal of resolving the defect to the “customer’s satisfaction.” Gm admits that its customers are not guaranteed that requested after-warranty goodwill adjustments will be made. Indeed, gm suggests its dealers negotiate with customers for copayment on goodwill adjustments case by case.[7] Nevertheless, gm’s goodwill policy is a promise to hear and address customer complaints even after the written warranty expires.
To have consideration there must be a bargained-for exchange. Higgins v Monroe Evening News, 404 Mich 1, 20-21; 272 NW2d 537 (1978). There must be *239 “ ‘a benefit on one side, or a detriment suffered, or service done on the other.’ ” Plastray Corp v Cole, 324 Mich 433, 440; 37 NW2d 162 (1949). Courts do not generally inquire into the sufficiency of consideration, Harris v Bond & Mtg Corp, 329 Mich 136, 145; 45 NW2d 5 (1950). It has been said “[a] cent or a pepper com, in legal estimation, would constitute a valuable consideration.” Whitney v Steams, 16 Me 394 (1839). The owner’s manual provided at the time of sale invites customers to voice complaints even after the warranty period ends, with the goal of resolving the complaint to the customer’s satisfaction. We hold that this opportunity for dialogue and possible resolution of complaints—even outside the warranty period—is a benefit flowing to purchasers of GM vehicles at the time of retail sale and, therefore, is consideration for the sale.[8] Therefore, replacement parts provided pursuant to the goodwill program are subject to the sales tax at the time of retail sale and are exempt from the use tax under § 4(l)(a) of the uta.[9]
*240 Gm’s promise pursuant to its goodwill adjustments policy, while discretionary with respect to whether there will be any “adjustment,” is not discretionary regarding gm’s obligation to act reasonably and in good faith in response to a customer complaint.[10] Reinforcing this contractual undertaking to act in good faith is MCL 440.1203, part of Michigan’s version of the Uniform Commercial Code. MCL 440.1203 provides that “[e]very contract or duty within this act imposes an obligation of good faith in its performance or enforcement.”[11] This means that, should GM not consider complaints under the goodwill adjustment policy in good faith, it can be sued.
The dissent agrees that a unilateral or discretionary promise could “constitute valid consideration.” Post at 245. However, the dissent would decline to rule that gm’s promise is valid consideration in part because gm’s customers have “little if any” knowledge of the scope of gm’s discretion. Id. That it is unknown how liberally GM will exercise its discretion does not mean there is no discretion. In fact, it means there is discretion, i.e., a benefit to the consumer.[12] The dis-
*241 sent has fallen into the error of considering not merely if there is consideration, but its sufficiency. As we have stated, courts do not inquire into the adequacy of consideration to support a contract. Higgins, supra.[13] Thus, we conclude that the duty the goodwill policy imposes on GM to consider requests for redress in good faith is a valuable consideration that is worth far more than the legendary peppercorn.[14]
Moreover, the evidence indicates that for the period 1986-1992, plaintiff provided “goodwill” parts to customers of General Motors cars having an estimated value of $82 million. As the dissent itself recognizes, “the cost of . . . [these] parts has been factored into the retail cost of the car . . . .” Post at 247. If this is so, then such costs have been necessarily paid by the consumer at sale, i.e., a car otherwise valued at $9975 has been increased in price to $10,000 and the *242 consumer has paid an additional $25 for the goodwill policy. Plaintiff, not being a charitable institution, must necessarily have factored the cost of the goodwill policy into the cost of the car, and such cost must necessarily have been paid by the consumer. Further, it can be presumed that the consumer paid $25 because something of value passed. The automobile industry is sufficiently competitive that few companies can afford to tack costs onto their products for parts or services that are perceived as valueless by their consumers. Contrary to the dissent, we can easily envision a “rational, self-interested market participant” paying something for a benefit estimated to provide more than $13 million in annual benefits to consumers. Our interpretation of MCL 205.94(l)(a) does not constitute a “lax” interpretation of consideration as the dissent asserts. Post at 248. Rather, our interpretation is based on fundamental contract principles and reflects the realities of the marketplace.[15]
IV
Because the goodwill adjustment policy provides an opportunity for GM customers to seek redress of vehicle defects and because the policy is included in the retail price of GM vehicles and purchased at the time of retail sale, it is part of the consideration flow *243 ing to gm customers when they purchase a gm vehicle that is taxed pursuant to the gta at retail sale. We reverse the decision of the Court of Appeals and remand this case to the Court of Claims for entry of judgment in favor of gm.
Corrigan, C.J., and Taylor, Young, and Markman, JJ., concurred with Weaver, J.

 Use Tax Act, 1937 PA 94, MCL 205.91 et seq.

 1933 PA 167 as amended, MCL 205.51 et seq.

 General Motors, in a bulletin to its dealers, directs them to make goodwill adjustments case by case “where special consideration is in order to enhance customer satisfaction and loyalty.” Gm provides the dealers with a recommended set of guidelines for goodwill policy adjustments to help them distinguish defects in materials and workmanship from defects ca 1 by aging, physical damage, lack of proper maintenance, or owner abuse.
Testimony revealed that gm estimates the cost of, and establishes a budget reserve for, both warranty repairs and goodwill adjustments for the lifetime of every make and model of vehicle. Twice annually, gm internally audits both the cost of warranty repairs and that of the goodwill policy for each make and model of vehicle. A gm representative explained that the vehicle sales price is designed to recover all costs, including those associated with the goodwill adjustment policy, as well as to maintain profitability.

 We note the possibility of arbitration merely to provide a comprehensive outline of the complaint resolution procedure. In light of our analysis, it is not necessary to consider whether the possibility of arbitration is a form of “consideration” in this case.

 However, the Court of Appeals would have reversed the Court of Claims in part and remanded for further proceedings with regard to gm’s constitutionally based arguments that it was denied equal protection of the laws and the benefit of uniformity of taxation because the department did not apply the use tax in the same way to other similarly situated parties. In light of our conclusion that the transactions at issue are not subject to the use tax as a matter of statutory law, it is unnecessary to reach these constitutional issues.

 Unpublished opinion per curiam, issued May 9, 2000 (Docket No. 213186).

 Gm Service Bulletin No. 57-05-01, April 1995.

 While acknowledging that a customer pays for the goodwill program, the dissent “cannot fathom” that a customer would bargain for the opportunity to have postwarranty complaints addressed. This skepticism is inconsistent with this Court’s traditional reluctance to question the sufficiency of consideration and is not justification to override the Legislature’s expression of intent in uta § 4(l)(a) to avoid the pyramiding of the sales and use taxes.

 While not part of our dispositive analysis, it is noteworthy that gm audits the cost of the goodwill adjustment policy twice annually with the goal of recovering costs and maintaining profitability. A witness for the department acknowledged that gm uses the same method to account for the cost of warranty repairs and goodwill policy adjustments. It is evident that GM attempts to effectively include the cost of warranty repairs in the retail price of its vehicles. The record reflects that the cost of the goodwill adjustment policy is likewise included in the retail price of gm vehicles. A gm witness testified that “implicit in the price is the fact that we need to cover all the costs, and both policy and warranty are costs that are included . . . .”

 As stated by Professor Arthur Corbin:
Promissory words are not nullified by making the promise conditional on some event within the promisor’s own power, if at the same time the promisor impliedly promises to make a reasonable effort to bring the event about or to use good faith and honest judgment in determining whether or not it has in fact occurred. [2 Corbin, Contracts, § 5.32, p 177.]

 Because the sale of a vehicle is the sale of a good, a contract for such a sale is subject to the Uniform Commercial Code. See MCL 440.2102 (providing generally that the ucc “applies to transactions in goods”).

 We note that this is a greater right than the inherent ability to complain possessed by consumers generally. While a customer would typically have the practical ability to bring a complaint to the attention of a manufacturer, absent a contractual or other legal duty, the manufacturer would *241 be free to simply ignore such complaints without giving them any consideration. However, because of its contractual undertaking for the goodwill policy, GM has a duty to consider such complaints in good faith.

 This point is reinforced by Professor Samuel Williston:
It is an elementary and oft quoted principle that the law will not inquire into the adequacy of consideration so long as the consideration is otherwise valid to support a promise. By this is meant that so long as the requirement of a bargained-for benefit or detriment is satisfied, the fact that the relative value or worth of the exchange is unequal is irrelevant so that anything which fulfills the requirement of consideration will support a promise, regardless of the comparative-value of the consideration and of the thing promised. The rule is almost as old as the doctrine of consideration itself. [3 Williston, Contracts (4th ed), § 7:21, pp 383-386.]

 In concluding that the goodwill program amounted to an illusory promise, the Court of Appeals referenced Barbat v M E Arden Co, 74 Mich App 540, 543-544; 254 NW2d 779 (1977), for the proposition that “[a]n unenforceable promise cannot constitute consideration.” However, that case is inapplicable because it involved a promised performance that was “unenforceable” because it was void as illegal.

 The dissent asserts that “[m]erely because plaintiff proved through its accounting methods that it charges all consumers for costs associated with a program . . . , I cannot conclude that ‘consideration’ was paid by purchasers . . . Post at 246, n 4. If this statement does not set forth the very essence of “consideration,” it is hard to know what the term means. Of course, we recognize that not every cost factored into the price of a manufacturer’s product is exempt from use tax as a form of “consideration” to a customer. Costs that do not provide a benefit to a customer could not be consideration.