# STATE OF MICHIGAN

# COURT OF APPEALS

JOBY CLARK,

        Plaintiff-Appellant,

v

BUTOKU KARATE SCHOOL, LLC and JOHN
WASILINA,

        Defendant-Appellees.

UNPUBLISHED
August 18, 2016

No.  326638
Macomb Circuit Court
LC No.  2013-004479-CB

Before:  BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Plaintiff Joby Clark appeals as of right the trial court's order granting summary disposition to defendants, Butoku Karate School, LLC, and John Wasilina, of plaintiff's claims for failure to distribute his interest in a limited liability company, fraud, and conversion.  We affirm.

## I.  FACTS

This case arises from plaintiff's departure from defendant Butoku Karate School, LLC, a limited liability company in which plaintiff and defendant John Wasilina were the only members. Plaintiff and Wasilina formed the company in 2002 for the purpose of operating a karate school, and together operated the school until plaintiff left the company in January 2011.  Several months earlier, in June 2010, Wasilina learned of a rumor that plaintiff was having a sexual relationship with an underage student of the school.  Plaintiff assured Wasilina that the rumor was false.  Wasilina testified that during the following months, he discussed the topic many times with plaintiff.  According to Wasilina, he and plaintiff agreed that the allegations, even if meritless, would likely destroy the school because most of the students were children and parents were likely to withdraw their children.  According to Wasilina, he and plaintiff therefore agreed to part ways.  By contrast, plaintiff denies that he and Wasilina discussed parting ways until January, 2011.

On January 5, 2011, plaintiff and Wasilina together went to the bank and withdrew $100,000 from the company's account, which represented the majority of the company's funds. Plaintiff and Wasilina each received $50,000 of the proceeds of the account.  Also in early January 2011, Wasilina learned that the student had retracted her earlier denial of the affair with plaintiff and that plaintiff would likely face criminal prosecution.  The record is unclear on

-1-

whether Wasilina learned of the student's retraction before or after he and plaintiff withdrew and divided the company's funds.

On January 12, 2011, Wasilina met with plaintiff and requested that plaintiff sign two documents. The first document was entitled "Notice of Dissolution[1]" and provided in part:

> The partnership heretofore existing between Joby Clark and John Wasilina, under the fictitious name of Butoku [K]arate Dojo, . . . is now dissolved by mutual consent.

> That Joby Clark, . . . has withdrawn from and is no longer associated in conducting of said business, and is giving up all legal rights to said business, and John Wasilina, . . . will conduct said business hereafter, has assumed all of the outstanding obligations of said business incurred heretofore and hereafter, and is entitled to all of the assets of said business.

The second document was entitled "The Consent of the Members" and provided in part:

> IT IS HEREBY RESOLVED that, pursuant to MCL 450.4509, and Sections 8.1, 8.3, and 9.1 of the Company's Operating Agreement dated March 28, 2002, the Company accepts the immediate withdrawal and resignation of Member Joby Clark from any and all aspects [of] the Company. . . . Joby Clark's interest in the Company *is extinguished in its entirety without a substitute or financial compensation* . . . . The undersigned understand, agree, and acknowledge the fact that Joby Clark shall maintain no further duties, obligations, financial obligations, or responsibilities of any kind to the Company, *nor does the Company owe any monies, duties, rights, responsibilities, privileges, accountings, or any other items or tangible means of remuneration* in any way to the resigning Member, Joby Clark. . . .

> *Joby Clark acknowledges having already removed all of his personal and/or business effects and/or property from the location of the Company,* . . . and further agrees and acknowledges that there is no reason whatsoever for him to return to said premises. . . [Emphasis added.]

Both plaintiff and Wasilina signed the documents on January 12, 2011[2]. The parties disagree, however, regarding the conversation that took place that day. Wasilina testified that he

---

[1] The Notice of Dissolution, perhaps mistakenly, dissolves any "partnership" that may have existed between plaintiff and Wasilina, citing The Uniform Partnership Act, and is therefore not relevant to the analysis of plaintiff's withdrawal as a member of Butoku Karate School, LLC. The language of the document, however, is indicative of plaintiff's intent to relinquish any right to receive further compensation for his interest in the company.

told plaintiff that he no longer wanted to be affiliated with plaintiff and therefore asked plaintiff to sign the documents ending plaintiff's membership in the company. By contrast, plaintiff asserts that during this meeting Wasilina assured him that plaintiff's withdrawal from the company was temporary and that plaintiff could rejoin the company in the future after the rumors regarding the student affair had dissipated.

On February 19, 2011, plaintiff was arrested on criminal charges[3] related to his alleged relationship with the minor student. Plaintiff was twice tried on the charges with both trials resulting in mistrials. In lieu of proceeding to a third trial on the charges, plaintiff entered a plea of no contest to a lesser charge.

Plaintiff thereafter brought this action against defendants, alleging three counts arising from the dissolution of the business relationship, being fraud, failure to distribute, and conversion. The first count alleged that defendants had defrauded plaintiff because Wasilina had induced plaintiff to sign the documents by misleading plaintiff into believing that he would later be reinstated in the company, and also by promising to pay plaintiff for his membership interest. Plaintiff's second count alleged that he was owed a distribution from the company for having ended his membership. The third count alleged conversion, contending that plaintiff had left personal property at the karate school and that defendants had possession of that property.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7) and (10). Defendants argued pursuant to MCR 2.116(C)(7) that the documents signed by plaintiff operated as a release. Defendants further argued that summary disposition was appropriate pursuant to MCR 2.116(C)(10) because under the undisputed facts plaintiff had failed to allege a count for fraud, that plaintiff was not entitled to distribution under the Michigan Limited Liability Company Act, and that plaintiff had failed to state a claim for conversion. The trial court granted defendants' motion for summary disposition[4]. The trial court found that there was no demonstration that defendants had defrauded plaintiff, that plaintiff had in fact received a distribution of $50,000 from the company and had agreed that nothing further was owed to plaintiff, and that plaintiff had failed to establish a claim for conversion.

Plaintiff thereafter moved for reconsideration of the trial court's order, arguing that the trial court had incorrectly concluded that the payment of $50,000 was a withdrawal distribution, and therefore incorrectly concluded that there had been consideration for plaintiff's withdrawal

[2]The Notice of Dissolution is dated January 12, 2011, while the Consent of the Members is dated January 20, 2011. Both plaintiff and Wasilina, however, agree that they both signed both documents on January 12, 2011.

[3]The parties agree as to these facts, but the record is silent regarding the precise charges filed against plaintiff and the specific offense to which he pleaded no contest.

[4]Although the trial court noted in its opinion and order that defendants had moved for summary disposition pursuant to both MCR 2.116(C)(7) and (10), the trial court's opinion and order suggests that it granted summary disposition of all claims pursuant to MCR 2.116(C)(10), finding no genuine issue as to any material fact and that defendants were entitled to judgment as a matter of law.

from the company. The trial court denied the motion for reconsideration, holding that even if the $50,000 had not been consideration for the withdrawal from the company, there was nonetheless consideration for plaintiff's agreement to step down because Wasilina had assumed the debts of the company, and summary disposition was therefore appropriate.

## II. FAILURE TO DISTRIBUTE

On appeal to this Court, plaintiff contends that the trial court erred in granting summary disposition to defendants because factual issues remained in dispute. Specifically, plaintiff first argues that there was a genuine issue of material fact concerning whether he was entitled to a distribution for his interest in the company. We disagree.

We review de novo the grant or denial of summary disposition to determine whether the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We review a motion pursuant to MCR 2.116(C)(10) by considering in the light most favorable to the nonmoving party the pleadings, admissions, and other evidence submitted by the parties. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). When the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ, a genuine issue of material fact exists. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The withdrawal of a member from a limited liability company is addressed in MCL 450.4509, which is part of the Michigan Limited Liability Company Act, MCL 450.4101 *et seq*. MCL 450.4509 provides:

(1) A member may withdraw from a limited liability company only as provided in an operating agreement. A member withdrawing pursuant to an operating agreement may become entitled to a withdrawal distribution as described in section 305.

(2) An operating agreement may provide for the expulsion of a member or for other events the occurrence of which will result in a person ceasing to be a member of the limited liability company.

MCL 450.4305 provides:

Until the effective date of withdrawal, a withdrawing member shall share in any distribution made in accordance with section 304. An operating agreement may provide for an additional distribution to a withdrawing member. If a provision in an operating agreement permits withdrawal but is silent on an additional withdrawal distribution, a member withdrawing in accordance with the operating agreement is entitled to receive as a distribution, within a reasonable time after withdrawal, the fair value of the member's interest in the limited liability company as of the date of withdrawal based upon the member's share of distributions as determined under section 303.

-4-

Thus, pursuant to MCL 450.4509, a member's withdrawal from a limited liability company is governed by that company's operating agreement. Only if an operating agreement is silent on the subject of additional distribution to a withdrawing member is distribution to a withdrawing member governed by §305. If an operating agreement is not silent on the subject, the terms of the operating agreement control the issue.

In this case, defendants attached a copy of the company's Operating Agreement in support of defendants' motion for summary disposition before the trial court. The document is signed by both plaintiff and Wasilina. Sections 9.2 and 8.1 of the Operating Agreement provide, in relevant part:

**Section 9.2    Dissociation**

A Member shall become disassociated from and cease to be a Member of the Company upon the happening of any of the following events:

(a) the withdrawal of a Member with the consent of all remaining Members;

**Section 8.1    Voluntary Transfers**

No Member may withdraw and receive the fair value of his/her Membership Interest until the earlier of the date the Company liquidates and winds up its affairs or a date agreed upon for such and memorialized in writing by all the Members of the Company.

Thus, the Operating Agreement permits a member to withdraw and is not silent on the issue of a withdrawal distribution. Because the Operating Agreement is not silent on the matter of a withdrawal distribution, the terms of the Operating Agreement control on that issue and plaintiff is not entitled to look to the terms of MCL 450.4305 to govern the issue of withdrawal distribution.

In addition, § 9.1 of the Operating Agreement allows the Operating Agreement to be amended. That section provides:

**Section 9.1    Amending the Operating Agreement**

Unless previously authorized by those Members who represent 100% of the aggregate Membership Interests, the Members shall not have power to amend this Agreement in such a way so as to:

(a) enlarge the rights or powers or diminish the duties or obligations of the Members;
(b) diminish the rights or powers or enlarge the duties or obligations of the Members;
(c) appoint, add, or remove a Member unless otherwise so authorized herein;
(d) alter the term of the Company as provided in Article 2 or change this Section 9.1; or

(e) modify or otherwise affect the rights and restrictions pertaining to the assignability of Membership Interests

Unless otherwise prohibited herein or by law, any part of this Agreement may be amended by the affirmative vote of those Members who represent 100% of the aggregate Membership Interests. However, no vote of the Members may take away any interest of right that has become vested in any Member.

On January 12, 2011, plaintiff and Wasilina signed the Consent of the Members document, which provides:

IT IS HEREBY RESOLVED that, pursuant to MCL 450.4509, and Sections 8.1, 8.3, and 9.1 of the Company's Operating Agreement dated March 28, 2002, the Company accepts the immediate withdrawal and resignation of Member Joby Clark from any and all aspects [of] the Company . . . Joby Clark's interest in the Company *is extinguished in its entirety without a substitute or financial compensation* . . . . The undersigned understand, agree, and acknowledge the fact that Joby Clark shall maintain no further duties, obligations, financial obligations, or responsibilities of any kind to the Company, *nor does the Company owe any monies, duties, rights, responsibilities, privileges, accountings, or any other items or tangible means of remuneration* in any way to the resigning Member, Joby Clark. [Emphasis added.]

Both plaintiff and Wasilina signed the Consent of the Members document, which means that it was approved by the members representing 100% of the membership interests. The Consent of the Members document amended the Operating Agreement, which was a permissible action under the Operating Agreement, as it was authorized by 100% of the membership interests. The clear language of the Consent of the Members states that plaintiff relinquished any potential right to additional payment that he may have had previously. Though we give plaintiff the benefit of reasonable doubt as the nonmoving party, there is no genuine issue of material fact that, under the terms of the Operating Agreement and the Consent of the Members, plaintiff is not entitled to any additional withdrawal distribution from the company or Wasilina. See *West,* 469 Mich at 183.

Plaintiff argues, however, that he is nonetheless entitled to compensation because there was no consideration for plaintiff withdrawing from the membership, suggesting that his withdrawal was therefore an invalid contract. A valid contract requires (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012). Consideration requires a bargained-for exchange, where a benefit is received on one side, or a detriment suffered or a service provided on the other side. *Gen Motors Corp v Dep't of Treasury, Revenue Div*, 466 Mich 231, 238-239; 644 NW2d 734 (2002). Courts do not inquire into the adequacy of consideration to support a contract. *Id*. at 241.

Plaintiff's argument is misplaced, however, because plaintiff and defendants did not "contract" for plaintiff's withdrawal from the company. Plaintiff did not allege breach of

contract in his complaint before the trial court and plaintiff points to no contract between himself and defendants. Rather, plaintiff was a member of a limited liability company and his withdrawal from that company and any withdrawal distribution to which he may have been entitled is therefore governed by the Operating Agreement of that company, and the Michigan Limited Liability Company Act, MCL 450.4101 *et seq*. Plaintiff may not do an "end run" around that act and the company's Operating Agreement by arguing that "consideration" is due even though a withdrawal distribution is not[5]. As the trial court correctly stated in its opinion and order, "By executing the [Consent of the Members document] Plaintiff agreed to amend the Operating Agreement to provide, *inter alia*, that he was not entitled to any further remuneration, which by extension includes a right to further distributions."

Moreover, we note that by signing the Consent of the Members, plaintiff himself authorized the company to accept plaintiff's withdrawal from the company and to dictate the terms of that withdrawal. Plaintiff essentially fired himself; defendants could not have taken this action without plaintiff's authorization. Plaintiff is not the victim of a contract without consideration; if anything, plaintiff Joby Clark is the victim of the action that Member Joby Clark authorized the company to take. Plaintiff may now be unhappy with the action that the membership of the company took, but plaintiff himself was 50% of that membership. Plaintiff is not entitled to any further compensation from the company or Wasilina, and defendants therefore were entitled to judgment as a matter of law on this issue.

## III. FRAUD

Plaintiff also contends that the trial court erred in granting summary disposition to defendants on the issue of fraud because there was a genuine issue of material fact regarding this claim. We disagree. To establish a prima facie claim of fraudulent misrepresentation, a plaintiff must demonstrate that (1) the defendant made a material representation; (2) the representation was false; (3) the defendant knew that it was false, or made it recklessly; (4) the defendant made the representation with the intention that the plaintiff would act in reliance upon the representation; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered damage. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 378; 689 NW2d 145 (2004).

The element of reliance requires that the reliance be *reasonable* reliance upon the false representation. *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994). In this case, plaintiff claims that he was induced to sign the Notice of Dissolution and the Consent of the Members by Wasilina's assurances that plaintiff could rejoin the business in the future, and also that defendants would pay plaintiff for plaintiff's withdrawal. That plaintiff would have relied upon such assurances, if such were made, is extraordinary given that the language of the documents plaintiff signed states exactly the opposite.

---

[5] We further note that contrary to plaintiff's argument, the purpose of the $50,000 disbursement he received is immaterial; plaintiff released any right to additional compensation when he signed the Consent of the Members document.

The Consent of the Members explicitly provides that plaintiff is immediately resigning and withdrawing in all respects, that plaintiff will no longer be associated with any aspect of the company, and that :

> Joby Clark's interest in the Company is extinguished in its entirety without a substitute or financial compensation . . . nor does the Company owe any monies, duties, rights, responsibilities, privileges, accountings or any other items or tangible means of remuneration in any way to the resigning Member, Joby Clark. . . . Joby Clark acknowledges having already removed all of his personal and/or business effects and/or property from the location of the Company, . . . and further agrees and acknowledges that there is no reason whatsoever for him to return to said premises, whether it [be] personal or professional. The Members hereby completely renounce their previous business relationship with Joby Clark disassociating himself from Company. . .

The document is explicit that plaintiff will not be receiving further financial compensation and is not owed any money by the Company, that plaintiff has no further reason to return to the business premises, and that the previous business relationship is renounced. It is difficult to imagine language more definite in ending a business relationship. Interestingly, plaintiff does not contend that he was unaware of the action that he was authorizing the company to take by signing the Consent of the Members. Rather, plaintiff admits that he understood the actions that the documents authorized, but chose to believe that the opposite result would occur. If, as plaintiff suggests, an oral statement was made contrary to the explicit language of the documents that he signed, plaintiff's reliance was not reasonable. See *Nieves*, 204 Mich App at 464-465. Therefore, even if plaintiff's allegations are accepted as true, he has not established a genuine issue of material fact and defendants were properly granted summary disposition of plaintiff's claim of fraud.

## IV. CONVERSION

Finally, plaintiff argues that summary disposition was improperly granted on his conversion claim. Again, we disagree. Conversion is an intentional tort which is defined as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distrib Services, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015).

> In this case, count III of plaintiff's complaint alleges conversion, but states only:

> 45. Plaintiff incorporates by reference paragraph nos. 1 through 41 as if fully stated here in.

> 46. Defendants continue to maintain dominion and control over property that is belonging to Plaintiff.

> 47. Defendants' conversion of Plaintiff's property is to Plaintiff [sic] detriment.

In an affidavit attached to plaintiff's response to defendants' motion for summary disposition before the trial court, plaintiff identified his property allegedly left behind at the

school as "karate equipment, awards, rank certificates, tools and other personal items." Plaintiff does not explain what actions of defendants allegedly converted the property, nor does he give any indication of how defendants prevented him from recovering any of his personal property. A mere statement of the plaintiff's conclusion, unsupported by allegations of fact, does not establish a cause of action. *Lawsuit Financial, LLC v Curry*, 261 Mich App 579, 592; 683 NW2d 233 (2004); *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 272; 671 NW2d 125 (2003). Therefore, even giving plaintiff as the nonmoving party the benefit of reasonable doubt, there is no genuine issue of material fact and defendant is entitled to judgment as a matter of law of plaintiff's conversion claim.

Moreover, in this case, plaintiff left the property in question at the business premises and, by signing the Consent of the Members document, consented that any property left there was not his. The document explicitly states: "Joby Clark acknowledges having already removed all of his personal and/or business effects and/or property from the location of the Company." A plaintiff does not have a valid claim for conversion if the defendant has a greater right to possess the property than does the plaintiff. *Rohe Scientific Corp v Nat'l Bank of Detroit*, 133 Mich App 462, 468; 350 NW2d 280 (1984), mod on reh on other grounds 135 Mich App 777; 355 NW2d 883 (1984). Stated another way, a person is not liable for conversion of property if he has a right to possess or dispose of the property. *Thoma v Tracy Motor Sales, Inc*, 360 Mich 434, 438; 104 NW2d 360 (1960). Giving plaintiff the benefit of reasonable doubt, there is no genuine issue of material fact and defendants were entitled to summary disposition of plaintiff's conversion claim, as well as plaintiff's other claims.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola