*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

CADILLAC RUBBER & PLASTICS, INC., doing business as AVON AUTOMOTIVE, and AVON AUTOMOTIVE HOLDINGS, INC.,

> Plaintiffs-Appellants,

v

TUBULAR METAL SYSTEMS, LLC,

> Defendant-Appellee.

FOR PUBLICATION
February 11, 2020
9:10 a.m.

No. 345512
Oakland Circuit Court
LC No. 2018-164214-CB

Before: FORT HOOD, P.J., and SAWYER and SHAPIRO, JJ.

SAWYER, J.

Plaintiffs (collectively referred to as "Avon") appeal from an order of the circuit court granting summary disposition in favor of defendant under MCL 2.116(I)(2) (opposing party, rather than moving party, entitled to immediate judgment). We affirm.

Avon is a supplier of automotive parts, supplying hoses to defendant ("Tubular"), which in turn uses the hoses in producing parts for General Motors. Tubular issued two blanket purchase order to Avon, one in 2012 and the other in 2016. Both purchase orders provided that Tubular would release material requirements each week. The orders further incorporated by reference Tubular's terms and conditions of purchase, which were posted online. Paragraph 4(b) of those terms and conditions is particularly relevant to this case, stating:

> If the face of the Order . . . specifies the quantities as . . . "blanket order", then, in consideration for ten US dollars (US$10.00), the payment of which shall be made by Buyer upon the termination or non-renewal of this Order, Seller grants to Buyer an irrevocable option during the term of this Order to purchase Supplies in such quantities as determined by Buyer and identified as firm orders in material authorization releases, manifests, broadcasts or similar releases ("Material Authorization Releases") that are transmitted to Seller during the term of this Order . . . provided that Buyer shall purchase no less than one piece or unit of each of the Supplies and no more than one hundred percent (100%) of Buyer's

-1-

requirements for the Supplies. All references herein to "this Order" shall include any Material Authorization Releases.

Additionally, paragraph 2 of the terms and conditions stated that the contract was "for the life of the program initiated by Buyer's Customer," identifying General Motors' Epsilon program as the relevant program.

Beginning with the 2012 purchase order, Tubular issued weekly material authorization releases to Avon, listing the quantity of parts needed and a reasonable forecast of future requirements. Avon fulfilled those releases with the required parts. In 2018, Avon filed this action seeking declaratory judgment and damages for breach of contract. Under the purchase orders and Tubular's terms and conditions, Tubular is only obligated to purchase the quantity of parts set forth in its material authorization releases. According to Avon, "[t]his 'per-releases' quantity term creates a series of spot-buy (also called fixed-quantity) contracts, not a requirements contract." Therefore, Avon asserted that it had the right to accept or reject each material authorization release issued by Tubular. Avon further claimed that the "irrevocable option" allegedly created by ¶ 4(b) of Tubular's terms and conditions "is invalid and/or not binding on Avon because it is on Tubular's form and Avon did not separately sign the portion of the form that contains the alleged firm offer. MCL 440.2205." Avon requested a judgment declaring that the blanket purchase orders are not requirements contracts, the alleged "irrevocable option" in Tubular's terms is invalid or unenforceable, and Avon has the right to reject any material authorization release that Avon has not yet accepted. Avon also asserted that Tubular had breached the parties' contracts by requiring Avon to supply Tubular's requirements of the parts.

Simultaneous with filing this action, Avon filed a motion for summary disposition under MCR 2.116(C)(9) and (10). Avon argued that it was entitled to a declaratory judgment as a matter of law, that Tubular's terms and conditions do not create a requirements contract, and that the alleged irrevocable option in Tubular's terms and conditions is invalid. Tubular filed a response to Avon's motion and requested summary disposition in favor of Tubular under MCR 2.116(I)(2). Tubular argued that an enforceable requirements contract existed between the parties in light of the blanket purchase orders, Tubular's terms and conditions, the material authorization releases, and the parties' ongoing relationship since 2012. Tubular further argued that an enforceable option contract existed.

Following a hearing, the trial court issued a written opinion and granted summary disposition in favor of Tubular. Avon now appeals and we affirm.

This Court reviewed the applicable standard of review for summary disposition under MCR 2.116(I)(2) in *Lockwood v Twp of Ellington*, 323 Mich App 392, 400-401; 917 NW2d 413 (2018):

> We review a trial court's decision regarding a motion for summary disposition de novo. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). A motion for summary disposition brought under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint," *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 768; 887 NW2d 635 (2016), and should be granted when "there is no genuine issue regarding any material fact and the moving party

is entitled to judgment as a matter of law," *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

"The moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). The court must consider all of the admissible evidence in a light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). However, the party opposing summary disposition under MCR 2.116(C)(10) "may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Oliver v Smith*, 269 Mich App 560, 564; 715 NW2d 314 (2006) (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014) (quotation marks and citation omitted).

If, after careful review of the evidence, it appears to the trial court that there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law, then summary disposition is properly granted under MCR 2.116(I)(2). *Holland v Consumers Energy Co*, 308 Mich App 675, 681-682; 866 NW2d 871 (2015), aff'd *Coldwater v Consumers Energy Co*, 500 Mich 158; 895 NW2d 154 (2017).

Additionally, the proper interpretation of a contract is a question of law which we also review de novo. *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 426; 670 NW2d 651 (2003). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

Avon first argues that the trial court erred in rejecting Avon's argument that the firm offer contained in Tubular's terms and conditions is not enforceable because Avon had not separately signed that document as required by MCL 440.2205. We disagree.

MCL 440.2205 provides:

An offer by a merchant to buy or sell goods in a signed writing which by its terms gives assurance that it will be held open is not revocable, for lack of consideration, during the time stated or if no time is stated for a reasonable time, but in no event may such period of irrevocability exceed 3 months; but any such term of assurance on a form supplied by the offeree must be separately signed by the offeror.

We agree with the trial court that the separate-signature requirement only applies when no consideration is given for the firm offer. The language clearly and unambiguously establishes a limitation on the length of time that an offer may be considered irrevocable if the firm offer is not

supported by consideration—for the stated time, or a reasonable time if there is no stated time, but not for more than three months. In our case, the firm offer was supported by consideration, specifically $10. Therefore, this provision does not apply.

This interpretation of the statutory text is supported by the official comments to UCC § 2-205, upon which MCL 440.2205 is modeled.[1] Comment 1 states, "This section is intended to modify the former rule which required that 'firm offers' be sustained by consideration in order to bind, and to require instead that they must merely be characterized as such and expressed in signed writings." MCL 440.2205, comment 1. Comment 3 provides:

> This section is intended to apply to current "firm" offers and not to long term options, and an outside time limit of three months during which such offers remain irrevocable has been set. The three month period during which firm offers remain irrevocable under this section need not be stated by days or by date. If the offer states that it is "guaranteed" or "firm" until the happening of a contingency which will occur within the three month period, it will remain irrevocable until that event. A promise made for a longer period will operate under this section to bind the offeror only for the first three months of the period but may of course be renewed. If supported by consideration it may continue for as long as the parties specify. *This section deals only with the offer which is not supported by consideration*. [MCL 440.2205, comment 3 (emphasis added).]

In addition to the non-binding comments, our conclusion is further supported by persuasive precedent from other jurisdictions. See, e.g., *In re Modern Dairy of Champaign, Inc*, 171 F3d 1106, 1110 (CA 7, 1999); in *E A Coronis Assoc v M Gordon Constr Co*, 90 NJ Super 69, 73; 216 A2d 246 (App Div, 1966) (UCC § 2-205 was designed to reverse the common law rule that "an offer not supported by consideration could be revoked at any time prior to acceptance"); *Realty*

---

[1] We recognize that the comments are not binding. This Court has explained:

> Although the official comments do not have the force of law, they are useful aids to interpretation and construction of the UCC. Further, the comments were intended to promote uniformity in the interpretation of the UCC. Therefore, it is appropriate for this Court to consider the official comments when interpreting Michigan's UCC. [*Prime Fin Servs, LLC v Vinton*, 279 Mich App 245, 260 n 6; 761 NW2d 694 (2008), lv den 482 Mich 1069 (2008).]

Our Supreme Court has emphasized that, because the official comments to the UCC do not have the force of law, "a reviewing court should focus first on the plain language of the statute in question, and when the language of the statute is unambiguous, it must be enforced as written." *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 560; 837 NW2d 244 (2013). In *Fisher Sand & Gravel Co*, our Supreme Court concluded that this Court had erroneously relied on an official comment to the UCC. *Id*. With this in mind, we refer to the official comments to this UCC provision only to reinforce and buttress our conclusion, which is based upon an analysis of the statutory language.

*Dev, Inc v Kosydar*, 322 NE2d 328, 332 (Ohio App, 1974) ("In order to constitute a firm offer to sell, irrevocable and *unnecessary to be founded on consideration*, the quotation must be a 'signed writing' giving assurance that it will be held open for acceptance by the purchaser.") (emphasis added).

This principle was also recognized in a leading treatise on the UCC:

The meaning of UCC § 2-205 has similarly been explained in a treatise[2] as follows:

Under the common law of contracts, it was frequently said that an offeror can always withdraw an offer if no consideration was received for it. But under the Code, 2-205 limits the offeror's right to withdraw[.]

\* \* \*

Section 2-205 . . . enables the offeror to make a "gift" of a firm offer in the sense that the offeree need not give any consideration, such as paying for the option. Section 2-205 is intended mainly to limit the power of an offeror to withdraw a firm offer if the offeree reasonably relies on the offer's firmness. . . . [1 White, Summers, & Hillman, Uniform Commercial Code (Practitioner Treatise Series, 6th ed), § 2:35, pp 134-135.]

In sum, the clear and ambiguous language of MCL 440.2205 supports the conclusion that that statute is simply inapplicable when a firm offer is supported by consideration. This interpretation is further supported by various persuasive authorities. And Avon makes no argument challenging the adequacy or existence of consideration in this case. Specifically, consideration of $10 was provided for in the agreement.[3]

Avon next argues that, even if there was an enforceable firm offer, this agreement did not create a requirements contract, but rather a "spot buy" contract. Like the trial court, we reject this argument.

MCL 440.2306(1) provides for requirements contracts as follows:

**Output, requirements.** A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any

---

[2] Treatises are not binding authority but may be considered persuasive. *Fowler v Doan*, 261 Mich App 595, 601; 683 NW2d 682 (2004), lv den 471 Mich 951 (2004).

[3] And, as the trial court noted, courts do not typically inquire into the sufficiency of the consideration. See *Gen Motors Corp v Dep't of Treasury, Revenue Div*, 466 Mich 231, 239; 644 NW2d 734 (2002) ("Courts do not generally inquire into the sufficiency of consideration. It has been said a cent or a pepper corn, in legal estimation, would constitute a valid consideration." (quotation marks, brackets, and citations omitted).

normal or otherwise comparable prior output or requirements may be tendered or demanded.

Comment 2 for this provision explains, in relevant part:

Under this Article, a contract for output or requirements is not too indefinite since it is held to mean the actual good faith output or requirements of the particular party. Nor does such a contract lack mutuality of obligation since, under this section, the party who will determine quantity is required to operate his plant or conduct his business in good faith and according to commercial standards of fair dealing in the trade so that his output or requirements will approximate a reasonably foreseeable figure. . . . [MCL 440.2306, comment 2.]

Requirements contracts need not be exclusive. In *Gen Motors Corp v Paramount Metal Prods Co*, 90 F Supp 2d 861, 873 (ED Mich, 2000), the court convincingly concluded that "MCL 440.2306 expresses a legislative intent to enforce both exclusive and non-exclusive requirements contracts." The court noted that "MCL 440.2306(2)[4] applies a standard to 'exclusive dealing' that is not applicable to the class of output requirements referred to in MCL 440.2306(1)." *Gen Motors Corp*, 90 F Supp 2d at 873. The court stated that "[t]he statute and official comments simply do not support [the defendant's] assertion that all requirements contracts are exclusive requirements contracts; a requirements contract may exist where all or some of the purchaser's requirements are purchased from the seller." *Id*. at 874.

A requirements contract arrangement very similar to what exists here was addressed in *Johnson Controls, Inc v TRW Vehicle Safety Sys, Inc*, 491 F Supp 2d 707 (ED Mich, 2007). In *Johnson Controls*, the plaintiffs (referred to collectively as "JCI") issued purchase orders to the defendant (referred to as "TRW") for various parts for a one-year period. *Id*. at 709.

The purchase orders stated the specific price of each part but did not state the quantity. This was because JCI's need for parts depended on General Motor's [sic] production schedule. Accordingly, when JCI had a need for parts it would issue a material release to TRW, requesting that TRW ship a specified number of parts. JCI followed this practice, which is standard in the automotive industry and known as a just-in-time supply system, in order to maintain a minimum inventory. [*Id*.]

The court in *Johnson Controls* explained that such automotive supply

---

[4] MCL 440.2306(2) provides:

**Exclusive dealing.** A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.

contracts are typically entered into with little or no negotiation and are primarily made up of carefully drafted boilerplate language. As in this case, the purchaser will issue a purchase order for a period of time at a fixed price that incorporates Global Terms. General Motors, for example, enters into roughly one million procurement contracts every year, at a total amount in excess of $80 billion – all governed by a single contract form containing thirty-one paragraphs. [*Id*. at 709 n 2 (quotation marks, ellipsis, and citation omitted).]

In *Johnson Controls*, JCI's purchase orders incorporated JCI's Global Terms, which contained language substantively identical in all relevant respects to the pertinent language in Tubular's terms and conditions in the instant case. See *id*. at 710. In particular, JCI's Global Terms provided that, in consideration for $10,

. . . Seller grants to Buyer an irrevocable option during the term of the Order to purchase Supplies in such quantities as determined by Buyer and identified as firm orders in material authorization releases, manifests, broadcasts, or similar releases ("Material Releases") that are transmitted to Seller during the term of the Order, and Seller will supply all such Supplies at the price and other terms specified in the Order; provided that the Buyer may purchase no less than a minimum quantity of at least one piece or unit of each of the Supplies and no more than 100% of Buyer's requirements for the Supplies. . . . [*Id*.]

In addressing an argument that JCI's purchase orders did not satisfy the statute of frauds, MCL 440.2201(1),[5] the court in *Johnson Controls* noted that the UCC "specifically contemplates contracts with indefinite quantity terms. See MCL 440.2306 (defining quantity in output or requirements contracts as actual good faith output or requirements)." *Johnson Controls*, 491 F Supp 2d at 717. The court observed that the purchase orders in that case referred to JCI's material releases, which were issued periodically to specify the exact quantities of parts needed. *Id*. Such references in the purchase orders have "some nexus to the notion of amount or quantity in light of the customary practice in the automotive industry of using just-in-time supply chains and material releases." *Id*. The court explained that

the quantity could be construed as simply referencing the amount of supplies indicated in the material releases. The releases are incorporated into the purchase

_____

[5] MCL 440.2201(1) states:

(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of $1,000.00 or more is not enforceable by way of action or defense unless there is a writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in the writing.

orders via the Global Terms and JCI is not obligated to purchase anything that exceeds the amounts stated in the material releases. On the other hand, the fact that the Global Terms referenced an option to purchase goods at a fixed price so long as JCI's orders were within a specific range of amounts could indicate that JCI was to purchase its requirements. That this may have been a requirements contract seems reasonable in light of the practice among automotive suppliers to enter into long-term, just-in-time production arrangements that rely on a fixed price and a variable quantity, and provide flexibility to adjust to changing commercial conditions. [*Id*. at 718 (citation omitted).]

The court thus concluded that the statute of frauds was satisfied. *Id*.

In the present case, the evidence indisputably establishes that the parties have a requirements contract. Tubular issued two purchase orders, one in 2012 and another one in 2016, that incorporated Tubular's terms and conditions. The purchase orders both noted that "MATERIAL REQUIREMENT WILL BE RELEASED WEEKLY." Tubular's terms and conditions likewise provided for the issuance of material authorization releases under which Tubular was obligated to purchase from Avon a quantity between one part and 100% of Tubular's requirements. The fact that Tubular was not required by the terms and conditions to purchase 100% of its requirements from Avon is not dispositive. As noted, a requirements contract need not be exclusive to be enforceable. *Johnson Controls*, 491 F Supp 2d at 720; *Gen Motors Corp*, 90 F Supp 2d at 873. We find these federal precedents persuasive and we choose to follow them.[6]

It is undisputed that the parties have performed consistently with the contractual documents since 2012. Tubular has regularly issued material authorization releases setting forth the quantity of parts needed as well as a reasonable forecast of future requirements, and Avon has fulfilled those releases by providing the required parts. Avon does not claim or present evidence that Tubular has failed to comply with its obligation under MCL 440.2306(1) to act in good faith in determining its requirements.

---

[6] Avon cites an unpublished lower federal court opinion concluding that "Michigan law is not well settled as to whether a requirements contract must be exclusive, i.e., whether all requirements must be purchased from the supplier and all needs of a given type directed to that supplier by the purchaser." *GRM Corp v Miniature Precision Components, Inc*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued January 8, 2008 (Docket No. 06-15231-BC), 2008 WL 82224, p 7. The court in *GRM Corp* stated that, apart from two arguably conflicting unpublished opinions of this Court, "little attention has yet been provided by the Michigan courts as to whether a requirements contract must be exclusive." *Id*. This Court is not bound by unpublished opinions of lower federal courts. *Bartlett Investments, Inc*, 319 Mich App at 60 n 2. Nor is this Court bound by unpublished opinions of this Court. MCR 7.215(C)(1). As stated above, we find persuasive the analyses in *Johnson Controls*, 491 F Supp 2d at 720, and *Gen Motors Corp*, 90 F Supp 2d at 873, concluding that, under Michigan law, a requirements contract need not be exclusive to be enforceable. And, to the extent that the *GRM* court was correct that Michigan law is not well settled on this point, with the publication of this opinion it now is.

In sum, the trial court correctly determined that the pertinent documents, including the purchase orders, Tubular's terms and conditions, and the material authorization releases, when considered together, established the existence of a requirements contract as a matter of law. The trial court properly granted summary disposition to Tubular.

Affirmed. Tubular may tax costs.


/s/ David H. Sawyer
/s/ Karen M. Fort Hood